## CICHOS *v.* INDIANA.

No. 45.  Argued October 19, 1966.—Decided November 14, 1966.

*John P. Price* argued the cause for petitioner.  With him on the brief were *Cleon H. Foust* and *John B. McFaddin.*

*Douglas B. McFadden,* Deputy Attorney General of Indiana, argued the cause for respondent, *pro hac vice,* by special leave of Court.  With him on the brief was *John J. Dillon,* Attorney General.

MR. JUSTICE WHITE delivered the opinion of the Court.

Following petitioner's trial in the Circuit Court for Parke County, Indiana, under a two-count affidavit charging him with reckless homicide and involuntary manslaughter, the jury returned a verdict reciting only that he was guilty of reckless homicide. Petitioner was sentenced to one to five years in prison and was fined $500 plus court costs. He appealed, and the Supreme Court of Indiana granted a new trial. Petitioner was retried on both counts, and the second jury returned the same verdict as the first. He was again sentenced to one to five years in prison but was fined only $100 plus court costs. The Supreme Court of Indiana affirmed this reckless homicide conviction, rejecting petitioner's contention that his retrial on the involuntary manslaughter count had subjected him to double jeopardy in violation of the Indiana and United States Constitutions.[1]

Asserting that the first jury's silence with respect to the manslaughter charge amounted to an acquittal under Indiana law and that his retrial on that charge placed him twice in jeopardy, compare *Green* v. *United States,* 355 U. S. 184, petitioner, in his petition for certiorari which we granted, presented a single question: Is the Fifth Amendment's prohibition against placing an accused in double jeopardy applicable to state court prosecutions under the Due Process Clause of the Fourteenth Amendment?

Because of the following considerations, which have more clearly emerged after full briefing and oral argument, we do not reach the issue posed by the petitioner and dismiss the writ as improvidently granted.

---

[1] "[N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb." U. S. Const., Amend. 5. "No person shall be put in jeopardy twice for the same offense." Ind. Const., Art. I, § 14.

1. The Indiana statutes define involuntary manslaughter as the killing of "any human being . . . involuntarily in the commission of some unlawful act." Ind. Stat. Ann. § 10–3405 (1956). The statutory penalty is two to 21 years' imprisonment.[2] The crime of reckless homicide, created in 1939 as part of Indiana's comprehensive traffic code, is committed by anyone "who drives a vehicle with reckless disregard for the safety of others and thereby causes the death of another person." Ind. Stat. Ann. § 47–2001 (a) (1965). For this crime, a fine and a prison term of from one to five years are authorized.

Recognizing the inherent overlap between these two crimes in cases of vehicular homicide, the Indiana Legislature has provided that

> "[A] final judgment of conviction of one [1] of them shall be a bar to a prosecution for the other; or if they are joined in separate counts of the same indictment or affidavit, and if there is a conviction for both offenses, a penalty shall be imposed for one [1] offense only." Ind. Stat. Ann. § 47–2002 (1965).

The Indiana courts have also recognized that reckless homicide "is a form of involuntary manslaughter," *Rogers v. State*, 227 Ind. 709, 715, 88 N. E. 2d 755, 758. Proof of reckless homicide necessarily establishes an unlawful killing that amounts to involuntary manslaughter. Both crimes require proof of the same elements to sustain a conviction under Indiana law. See *Rogers v. State, supra; State v. Beckman*, 219 Ind. 176, 37 N. E.

---

[2] Indiana adopted the common-law crime of involuntary manslaughter early in its history. The crime has traditionally been applied by the Indiana courts to cases of vehicular accidents resulting in death. *E. g., Smith v. State*, 186 Ind. 252, 115 N. E. 943 (auto accident); *State v. Dorsey*, 118 Ind. 167, 20 N. E. 777 (railroad accident).

2d 531. Thus, the effect of charging the two crimes in a single affidavit, as occurred in this case, was to give the jury the discretion to set the range of petitioner's sentence at two to 21 years by convicting him of involuntary manslaughter or at one to five years by convicting him of reckless homicide. As the Indiana Supreme Court in the case before us explained, "[t]he offenses here involved are statutorily treated more as one offense with different penalties rather than viewing reckless homicide as an included offense in involuntary manslaughter." —— Ind. ——, ——, 208 N. E. 2d 685, 688.

2. Petitioner does not assert that he should not have been tried again for reckless homicide. His only claim is that he should not have been tried again for involuntary manslaughter as well as reckless homicide because the jury's silence at his first trial with respect to involuntary manslaughter was legally an acquittal on this charge.

However, the Indiana Supreme Court squarely rejected this interpretation of the first jury's verdict. The court distinguished a long line of Indiana cases which have held that a jury's silence must be deemed an acquittal.[3] Because of the identity of the elements of these two crimes, and because the Indiana Supreme Court knew of "the trial court practice of telling the jury to return a verdict on only one of the charges in view of the limitation on penalty,"[4] id., at ——, 208 N. E.

---

[3] This doctrine developed in response to contentions that silence on any count required the setting aside of the entire verdict under the common-law rule that a defendant has an absolute right to a jury verdict on all charges for which he is tried. See *Weinzorpflin* v. *State*, 7 Blackf. 186 (Ind. 1844). Since a reckless homicide conviction is a statutory bar to further prosecution for involuntary manslaughter, § 47–2002, *supra*, petitioner cannot be adversely affected by the jury's silence with respect to the involuntary manslaughter count.

[4] The judge's charge to the jury in the first trial is not a part of the record in this case.

2d, at 687, the court concluded that "a verdict of guilty of reckless homicide does not logically exclude the possibility of such a verdict on the charge of involuntary manslaughter." *Id.*, at ——, 208 N. E. 2d, at 688–689. Therefore, "[T]he logic of the principle which states silence is equal to an acquittal is perhaps made inappropriate to charges of these offenses, related to the same unlawful transaction . . . . Rather than treat the silence of the jury in the involuntary manslaughter count in this case as an acquittal, the better result would seem to be to hold that the reckless homicide verdict encompassed the elements of involuntary manslaughter, and that appellant was simply given the lesser penalty." *Id.*, at ——, 208 N. E. 2d, at 687.

In the light of the Indiana statutory scheme and the rulings of the Indiana Supreme Court in this case, we cannot accept petitioner's assertions that the first jury acquitted him of the charge of involuntary manslaughter and that the second trial therefore placed him twice in jeopardy. Consequently, we do not reach or decide the question tendered by the petition for certiorari, and the writ is dismissed as improvidently granted.

*It is so ordered.*

While concurring in the Court's opinion, MR. JUSTICE BLAC adheres to his dissent in *Bartkus* v. *Illinois*, 359 U. S. 121, 150, to the effect that the Fourteenth Amendment makes the double jeopardy provision of the Fifth 'Amendment applicable to the States.

MR. JUSTICE FORTAS, with whom THE CHIEF JUSTICE and MR. JUSTICE DOUGLAS join, dissenting.

If this were a federal case, it would, in my view, be covered by *Green* v. *United States*, 355 U. S. 184 (1957). In *Green*, the defendant was not acquitted of the first degree murder charge at the first trial. Just as in the

present case, the jury did not return a verdict on that count, but convicted Green on the lesser charges of arson and second degree murder. But this Court held that Green could not be retried on the first degree murder charge. It clearly and unmistakably held that whether Green was "acquitted" of the greater offense was of no consequence. He had been exposed to jeopardy. See 355 U. S., at 188, 190–191. So, in the present case, it is of no consequence whether the silence of the jury on the involuntary manslaughter count amounted to acquittal. Petitioner was put in jeopardy on that count and cannot again be tried on that charge.

The only difference between *Green* and the present case—except as to the jurisdictions—is that in *Green,* on the second trial, the defendant was convicted on the aggravated count. In the present case, petitioner was again convicted on the less serious charge. I cannot see that this can justify a difference in result. Petitioner should not have been retried on an affidavit including the more serious charge, which was not involved in the appeal. That charge was dead—beyond resuscitation. Its wrongful inclusion in the affidavit was materially harmful to petitioner. First, it exposed him to the hazards of prosecution and conviction for the more onerous offense. Second, it again gave the prosecution the advantage of offering the jury a choice—a situation which is apt to induce a doubtful jury to find the defendant guilty of the less serious offense rather than to continue the debate as to his innocence. See *United States ex rel. Hetenyi* v. *Wilkins,* 348 F. 2d 844 (C. A. 2d Cir. 1965), cert. denied, 383 U. S. 913 (1966). And beyond the question of injury to the petitioner in this particular case is the fact that the procedure which Indiana used chills the right of appeal. It "has the necessary effect of unlawfully burdening and penalizing the exercise of the right to seek review of a criminal conviction." *United States*

v. *Ewell*, 383 U. S. 116, 130 (1966) (dissenting opinion). Defendants in Indiana in this type of case are admonished that if they appeal from a conviction on the less onerous charge they do so at the peril that on the next trial they may be tried, and possibly convicted, on the more serious count.

This is a state case. But the Fourteenth Amendment's requirement of due process, in my view, certainly and clearly includes a prohibition of this kind of heads-you-lose, tails-you-lose trial and appellate process. See the dissent of MR. JUSTICE BLACK in *Bartkus* v. *Illinois*, 359 U. S. 121, 150 (1959); *Brock* v. *North Carolina*, 344 U. S. 424, 429, 440 (1953) (dissenting opinions of Vinson, C. J., and DOUGLAS, J.).

The Second Circuit's views are in accordance with the position stated herein. See *United States ex rel. Hetenyi* v. *Wilkins, supra.*

I would reverse and remand.