**Nathan JACKSON, Petitioner,**

v.

**Harold W. FOLLETTE, as Warden of Green Haven Prison, Respondent.**

**No. 69 Civ. 1310.**

United States District Court,
S. D. New York.

Oct. 13, 1971.

Daniel G. Collins, New York City, for petitioner.

Louis J. Lefkowitz, N. Y., Atty. Gen., by Hillel Hoffman, Asst. Atty. Gen., New York City, for respondent.

CANNELLA, District Judge.

The petitioner's application for a writ of habeas corpus, made pursuant to 28 U.S.C. § 2241 et seq., is denied.

The petitioner was indicted in 1960 for first degree murder for the killing of a policeman within minutes after the commission of a robbery. He was tried and found guilty of common law murder in the first degree. The New York Court of Appeals affirmed the conviction without opinion. People v. Jackson, 10 N.Y.2d 780, 219 N.Y.S.2d 621, 177 N.E.2d 59 (1961). The United States Supreme Court denied certiorari. Jackson v. New York, 368 U.S. 949, 82 S.Ct. 390, 7 L.Ed.2d 344 (1961). A petition for a writ of habeas corpus was then filed in this District Court, challenging the constitutionality of the New York procedure for determining the voluntariness of the petitioner's confession, which had been used at trial. The Supreme Court ultimately decided that the procedure was inadequate and unreliable and therefore violative of the due process clause of the Fourteenth Amendment to the U.S. Constitution. Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964). The state was therefore given the opportunity to hold a hearing as to the voluntariness of the petitioner's confession or to grant him a new trial, or else release him. See 378 U.S. at 396, 84 S.Ct. at 1774. The state chose to retry him and, upon motion by the prosecutor, a special jury was impaneled pursuant to § 749–aa of the New York Judiciary Law, McKinney's Consol. Laws, c. 30 [1] over the petitioner's objection. At the second trial, the jury again found the petitioner guilty of murder in the first degree (based on the theory of felony murder). After conviction, a hearing was held pursuant to § 1045–a of the New York Penal Law (superseded by N.Y. Penal Law § 125.35 (1967), McKinney's Consol. Laws c. 40) at which the trial jury determined that the petitioner should suffer the death penalty. The New York Court of Appeals affirmed the conviction and sentence.[2] People v. Jackson, 20 N.Y.2d 440, 285 N.Y.S.2d 8, 231 N.E.2d 722 (1967). The Supreme Court again denied certiorari, with Mr. Justice Douglas

[1.] This section was subsequently repealed. Law of July 15, 1965, ch. 778, § 3, [1965] N.Y.Laws 1854.

[2.] The sentence has been commuted by the Governor to life imprisonment.

voting to grant the petition. Jackson v. New York, 391 U.S. 928, 88 S.Ct. 1815, 20 L.Ed.2d 668 (1968). The petitioner is now seeking habeas corpus relief in this Court, urging that his constitutional protection against double jeopardy was violated by his retrial and conviction for murder based on the felony murder theory, and secondly, that his trial by a special jury violated his rights under both the equal protection and due process clauses of the Fourteenth Amendment.

The Fifth Amendment provision that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb" is applicable to state proceedings through the Fourteenth Amendment. See Benton v. Maryland, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969). The Supreme Court has noted that the decision in *Benton* is to be accorded full retroactive effect. See Ashe v. Swenson, 397 U.S. 436, 437 n. 1, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970).[3]

█ The double jeopardy clause basically prohibits reprosecution for the same offense. However, no policy of the clause is offended when a defendant is retried for the same offense as a result of proceedings which he undertakes to correct trial errors.[4] See, e.g., United States v. Ewell, 383 U.S. 116, 86 S.Ct. 773, 15 L.Ed.2d 627 (1966); United States v. Tateo, 377 U.S. 463, 84 S.Ct. 1587, 12 L.Ed.2d 448 (1964); United States v. Ball, 163 U.S. 662, 16 S.Ct. 1192, 41 L.Ed. 300 (1896). "He is neither being denied the benefit of a former acquittal, being 'vexed' by a second prosecution for the same offense, nor being given a second punishment in a proceeding initiated against his will." United States v. Coke, 404 F.2d 836, 841 (2d Cir.1968).

In the case at bar, the court concludes that the petitioner, following successful assertion of his constitutional right to due process, was retried for the same crime, to wit, murder in the first degree, and that such retrial did not amount to his being placed twice in jeopardy in violation of the Fifth Amendment.

The petitioner refers to the fact that at both trials the prosecution presented evidence tending to show common law-premeditated murder (N.Y. Penal Law § 1044(1), superseded by N.Y. Penal Law § 125.25(1) (1967)) and felony murder (N.Y. Penal Law § 1044(2), superseded by N.Y. Penal Law § 125.25(3) (1967)). The judge at the first trial charged the jury that it could render a verdict on *only one* of the two theories: " * * * one or the other not both." As noted above, the verdict the first time was guilty of premeditated murder. The guilty verdict rendered at the second trial was based upon felony murder. The petitioner argues that the first verdict amounted to an implied acquittal with regard to felony murder and that he therefore could not be convicted of this at the second trial. He relies on Green v. United States, 355 U.S. 184, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957).

In *Green*, the trial judge instructed the jury that it could find the defendant guilty of arson and either first degree murder (felony murder) or second degree murder (murder with malice). The second degree murder charge was treated as an offense included within the language charging first degree murder. The jury found Green guilty of arson and second degree murder, but the verdict was silent as to first degree murder. Green's conviction for second degree murder was reversed and, on remand, he was subsequently retried and found guilty of the more serious, first degree murder charge. In reversing the

---

3. The footnote explained that North Carolina v. Pearce, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), decided at the same time as *Benton*, had unanimously accorded full retroactive effect to the *Benton* doctrine.

4. Upon a second conviction for the same offense, a trial judge may even impose a more serious sentence provided that the reasons for increased punishment affirmatively appear on the record. See North Carolina v. Pearce, supra note 3.

second conviction on grounds of double jeopardy, the Court stated:

> Green was in direct peril of being convicted and punished for first degree murder at his first trial. He was forced to run the gantlet once on that charge and the jury refused to convict him. When given the choice between finding him guilty of either first or second degree murder it chose the latter. In this situation the great majority of cases in this country have regarded the jury's verdict as an implicit acquittal on the charge of first degree murder. But the result in this case need not rest alone on the assumption, which we believe legitimate, that the jury for one reason or another acquitted Green of murder in the first degree. For here, the jury was dismissed without returning any express verdict on that charge and without Green's consent. Yet it was given a full opportunity to return a verdict and no extraordinary circumstances appeared which prevented it from doing so. Therefore it seems clear, under established principles of former jeopardy, that Green's jeopardy for first degree murder came to an end when the jury was discharged so that he could not be retried for that offense. 355 U.S. at 190–191, 78 S.Ct. at 225 (footnote omitted).

■ There are some obvious differences in the case at bar which readily distinguish it from the situation in *Green.* At the petitioner's first trial, the judge charged the jury with regard to only one crime, albeit based on two alternate theories of culpability. The concept of implied acquittal where the jury remains silent as to one of the offenses charged has usually been applied to cases involving crimes of different degrees or lesser included offenses. See, e.g., Price v. Georgia, 398 U.S. 323, 90 S.Ct. 1757, 26 L.Ed. 300 (1970) (murder and voluntary manslaughter); Mullreed v. Kropp, 425 F.2d 1095 (6th Cir.1970)

(armed robbery and unarmed robbery); Booker v. Phillips, 418 F.2d 424 (10th Cir.1969), cert. denied, 399 U.S. 910, 90 S.Ct. 2194, 26 L.Ed.2d 564 (1970) (first degree murder and first degree manslaughter); United States ex rel. Hetenyi v. Wilkins, 348 F.2d 844 (2d Cir. 1965), cert. denied sub nom. Mancusi v. Hetenyi, 383 U.S. 913, 86 S.Ct. 896, 15 L.Ed.2d 667 (1966) (first degree murder and second degree murder). A jury's silence as to the greater charge but conviction as to the lesser charge can be interpreted as (1) an outright acquittal on that greater charge; or (2) a failure to agree unanimously on the greater charge but unanimous agreement on the lesser charge; or (3) an expression of sympathy for the defendant in that punishment for the greater degree would be too severe; or (4) the result of a non-rational choice where the jury fails to comprehend the differences between the various degrees of the crime. See United States ex rel. Hetenyi v. Wilkins, 348 F.2d at 856–857. But none of these alternate explanations are apposite here: Even if murder in the first degree based on premeditation and murder in the first degree based on the commission of another felony are different offenses in the sense that the requisite elements of one are present in a given homicide but not those of the other or even that the requisite elements of both are involved in the same homicide, neither is greater than, nor lesser and included in, the other. Combining this fact with the crucial fact that the judge at the first trial specifically directed the jury to render a verdict on *only one* of the two bases [5] precludes drawing an irrefutable inference of acquittal; clearly, it can be equally inferred (1) that the first jury reached the same conclusion with respect to felony murder as the jury at the petitioner's second trial, but that the judge's direction precluded its pronouncement or (2) that the first jury never considered felony murder at all. Furthermore, insofar as only one crime is involved, it is

---

5. The petitioner apparently neither objected to this instruction nor requested any express finding with regard to the alternate bases.

relevant to compare the case at bar with Cichos v. Indiana, 385 U.S. 76, 87 S.Ct. 271, 17 L.Ed.2d 175 (1966), where the defendant was charged with reckless homicide and involuntary manslaughter. Under Indiana law, these charges were construed as a single offense with different penalties rather than a greater and an included offense. The jury returned a guilty verdict on the less serious reckless homicide charge only. After a successful appeal, the defendant was retried on both. The Supreme Court rejected a claim of double jeopardy because of the identity of the elements of these two charges and an Indiana trial court practice of instructing the jury to return a verdict on only one of the two. Unlike Cichos, the first degree murder theories herein do not involve different penalties.

 In view of the foregoing, the court concludes that the petitioner's retrial on the theory of felony murder did not place him twice in jeopardy.

The court further concludes that the petitioner's trial before a special or "blue ribbon" jury did not violate his rights to equal protection and due process. Although the statute authorizing the convening of such a jury has now been repealed except for selective treatment of jurors who have scruples against the death penalty,[6] the statute's constitutionality had been upheld by the Supreme Court in Fay v. New York, 332 U.S. 261, 67 S.Ct. 1613, 91 L.Ed. 2043 (1947). In considering the composition of a jury, the Court held that a "mere showing that a class was not represented in a particular jury is not enough; there must be a clear showing that its absence was caused by discrimination * * *." 332 U.S. at 284, 67 S.Ct. at 1626. The petitioner has not shown that any particular class or group was intentionally or purposefully excluded in such a manner as to violate his Fourteenth Amendment rights.

In view of the foregoing, the petitioner's application for a writ of habeas corpus is hereby denied.

So ordered.

6. See N.J.Judiciary Law §§ 590, 597 (1968).